1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| 7  MIKE ROSE'S AUTO BODY, INC., | Case No.  16-cv-01864-EMC |
| 8                    Plaintiff, | |
| 9          v. | **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| 10  APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC., | Docket No. 12 |
| 11                    Defendant. | |

12

13

14          Plaintiff Mike Rose's Auto Body, Inc. ("Rose") filed suit against Defendant Applied

15  Underwriters Captive Risk Assurance Company, Inc. ("AUCRA") on April 11, 2016.  Docket No.

16  1.  Rose seeks a declaration that its agreements with AUCRA are void and unenforceable, and that

17  it is entitled to rescission; a declaration that Rose owes AUCRA no money, and AUCRA owes

18  Rose $70,000; disgorgement of the money Rose has paid to AUCRA under the agreements; and

19  damages for fraud, breach of contract, and unfair business practices.  *See id*. at 7-12.

20          AUCRA filed the instant motion to compel arbitration on July 8, 2016.  *See* Docket No. 12

21  ("Motion").  Rose opposes this Motion.  *See* Docket No. 18 ("Opposition").  The Motion came on

22  for hearing on August 25, 2016, at which the parties asked the Court to delay issuing this Order

23  until they could meet and confer on various issues.  On September 15, 2016, the parties asked the

24  Court to issue the Order and filed supplemental materials.  *See* Docket No. 26 ("Stipulation").

25                    I.    **REQUESTS FOR JUDICIAL NOTICE**

26          Both parties requested judicial notice.  *See* Docket Nos. 13 (AUCRA's request for judicial

27  notice in support of its Motion), 19 (Rose's request for judicial notice), 21 (AUCRA's request for

28  judicial notice in support of its Reply).

*United States District Court*
For the Northern District of California

With its Motion, AUCRA seeks judicial notice of numerous materials from the California Senate. *See* Docket No. 13 at ¶¶ 1-11 (seeking judicial notice of Exhibits A-K, M-P, Senate and Assembly bills and committee analyses thereof). Such "[l]egislative history is properly a subject of judicial notice." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); *see also Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1241 (N.D. Cal. 2014) (taking notice of Assembly Bills from the California Senate). The Court will therefore take judicial notice of these materials.

AUCRA also seeks judicial notice of a section from the California Insurance Code. *See id*. ¶¶ 12-16 (seeking judicial notice of Exhibit L, California Insurance Code section 11737 ). Judicial notice is unnecessary as to California Insurance Code section 11737. *See United States v. Dedman*, 527 F.3d 577, 586-88 (6th Cir. 2008) (explaining that judicial notice of a statute is unnecessary, the court may simply consider it); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Judicial notice of legislative facts such as these is unnecessary.") (discussing Presidential Commission reports, military order, and a State Department memorandum, and citing Fed. R. Evid. 201(a), advisory comm. note to 1972 amendments).

With its Reply, AUCRA seeks judicial notice of Rule 11(b) of JAMS Comprehensive Arbitration Rules & Procedures, and of AUCRA's petition for a writ of mandate in California court. *See* Docket No. 21. Judicial notice of JAMS rules is proper. *See O'Connor v. Uber Techs., Inc.*, 150 F. Supp. 3d 1095, 1098 n.2 (N.D. Cal. 2015) (taking notice of a JAMS rule under Federal Rule of Evidence 201(b)). Judicial notice of the state court record is likewise proper. *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 843 n.4 (9th Cir. 2002) (noting without comment that the district court had taken judicial notice of state court records).

Rose seeks judicial notice of a decision by the California Insurance Commissioner. *See* Docket No. 19. Judicial notice of such administrative documents is proper because their "existence is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1192 n.4 (9th Cir. 2008) (taking judicial notice of a decision by the public utility commission); *accord Faragi v. Provident Life & Acc. Inc. Co.*, 161 F. App'x 649, 650 (9th Cir. 2005) (taking judicial

notice of records from the California Insurance Commissioner).

Accordingly, the Court takes judicial notice of the California Senate and Assembly bills and analyses, the legislative history, the JAMS rule, the state court record, and the decision by the California Insurance Commissioner.  The Court will consider, but need not take notice of, California Insurance Code section 11737.

## II.   MOTION TO COMPEL

A.   Background

Rose entered into two reinsurance participation agreements with AUCRA.  Mot. at 2.  The first was entered into on October 1, 2009, and the second on October 1, 2012.  *See* Pl.'s Exs. 3, 8 ("Agreements" or, if discussed individually, "Agreement").  Each Agreement had a three-year term, and provided worker's compensation insurance during that term.  *See* Compl. ¶ 11.

Under the Agreements, Rose deposited money into a "cell" to pay employees' claims.  *Id.* ¶ 13.  In February 2013, following the expiration of the first Agreement, Rose demanded that AUCRA reimburse the $70,000 remaining in Rose's "cell."  *Id.* ¶ 17.  AUCRA refused.  In 2015, following the expiration of the second Agreement, AUCRA informed Rose that it owed AUCRA $361,000.  *Id.* ¶ 23.  Rose refused to pay, and AUCRA began arbitration proceedings.  *Id.*

Each Agreement included an arbitration clause.  *See* Ex. 3 ¶ 13; Ex. 8 ¶ 13 ("Arbitration Clause" or the "Clause").  The Arbitration Clause provided, *inter alia*, that

> 13.      Nothing in this section shall be deemed to amend or alter the due date of any obligation under this Agreement. Rather, this section is only intended to provide a mechanism for resolving accounting disputes in good faith.
>
> (A)      It is the express intention of the parties to resolve any disputes arising under this Agreement without resort to litigation in order to protect the confidentiality of their relationship and their respective businesses and affairs. Any dispute or controversy that is not resolved informally pursuant to sub-paragraph (B) of Paragraph 13 arising out of or related to this Agreement shall be fully determined in the British Virgin Islands under the provisions of the American Arbitration Association.
>
> (B)      All disputes between the parties relating in any way to (1) the execution and delivery, construction or enforceability of this Agreement, (2) the management of operations of the Company, or (3) any other breach or claimed breach of this Agreement or the transactions contemplated herein shall be settled amicably by good

United States District Court
For the Northern District of California

3

**United States District Court**
For the Northern District of California

faith discussion among all of the parties hereto, and, failing such amicable settlement, finally determined exclusively by binding arbitration in accordance with the procedures provided herein. The reference to this arbitration clause in any specific provision of this Agreement is for emphasis only, and is not intended to limit the scope, extent or intent of this arbitration clause, or to mean that any other provision of this Agreement shall not be fully subject to the terms of this arbitration clause. All disputes arising with respect to any provision of this Agreement shall be fully subject to the terms of this arbitration clause.

(C)     Either party may initiate arbitration by serving written demand upon the other party or parties.  The demand shall state in summary form the issues in dispute in a manner that reasonably may be expected to apprise the other party of the nature of the controversy and the particular damage or injury claimed. The party receiving the demand shall answer in writing within 30 days and include in such answer a summary of any additional issues known or believed to be in dispute by such party described in a manner that reasonably may be expected to apprise the other party of the nature of the controversy and the particular damage or injury claimed. Failure to answer will be construed as a denial of the issues in demand.

. . .

(M)     Participant acknowledges and agrees that it will benefit from this Agreement and that a breach of the covenants herein would cause Company irreparable damage that could not adequately be compensated by monetary compensation. Accordingly, it is understood and agreed that in the event of any such breach or threatened breach, Company may apply to a court of competent jurisdiction for, and shall be entitled to, injunctive relief from such court, without the requirement of posting a bond or proof of damages, designed to cure existing breaches and to prevent a future occurrence or threatened future occurrence of like breaches on the part of Participant. It is further understood and agreed that the remedies and recourses herein provided shall be in addition to, and not in lieu of any other remedy or recourse which is available to Company either at law or in equity in the absence of this Paragraph including without limitation the right to damages.

Ex. 3 ¶ 13(A)-(C), (M); Ex. 8 ¶ 13(A)-(C), (M).

B.     Discussion

1.     Legal Standard

Under the Federal Arbitration Act, federal district courts must compel arbitration if a valid agreement to arbitrate exists and the dispute falls within the scope of that agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *accord Geier v. m-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016) (quoting *Chiron*).

The parties may include in their contract an "agree[ment] to arbitrate 'gateway' questions

United States District Court
For the Northern District of California

of 'arbitrability' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). This agreement "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Id.* at 70. Such sub-agreements have been called a "delegation provision," and will be so called here. *See id.* at 68. Where the parties have included a delegation provision, "'question[s] of arbitrability' may be delegated to the arbitrator." *Id.* at 79.

When a purported delegation provision appears in an arbitration clause, before sending the parties to the arbitrator the Court must decide (1) whether the parties intended to have a delegation provision, *see Rent-A-Ctr.*, 561 U.S. at 80 ("arbitrability may go to the arbitrator . . . when the parties have demonstrated, clearly and unmistakably, that it is their intent to do so"); (2) what is the scope of the delegation provision and whether it applies in the case at bar, *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("a disagreement about whether an arbitration clause . . . applies to a particular type of controversy is for the court"), *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008) (same); and (3) if a party attacks the delegation provision specifically, whether the delegation provision is valid, *see Rent-A-Ctr.*, 561 U.S. at 72 (not ruling on the petitioner's challenges because he challenged "the validity of the contract as a whole" rather than the delegation provision in particular); *Brennan v. Opus Bank*, 796 F.3d 1125, 1133 (9th Cir. 2015)("since Brennan failed to 'make any arguments specific to the delegation provision,' . . . and instead argued 'that the [Arbitration Clause] *as a whole* is unconscionable under state law,' . . . 'we need not consider that claim,' . . . because it is for the arbitrator to decide in light of the parties' 'clear and unmistakable' delegation of that question").

### 2.  The Court's Process in This Case

As noted above, the question of whether parties are bound by an agreement to arbitrate, and whether the parties' disagreement falls within the scope of an arbitration clause, should generally be decided by a court. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). However, the parties can agree contrary to the normal presumption, that these disputes must be resolved by an arbitrator, if they "clearly and unmistakably provide" for such a diversion from the norm. *Id.* at 83; *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) ("Although

**United States District Court**
For the Northern District of California

gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator.").  Thus, if there is a clear, unmistakable delegation provision, the applicability and enforceability of the arbitration clause is to be determined by an arbitrator.

Typically, the court first determines whether there is a clear and unmistakable delegation provision.  *See Rent-A-Ctr.*, 561 U.S. at 79 ("'question[s] of arbitrability' may be delegated to the arbitrator, *so long as* the delegation is clear and unmistakable") (emphasis added); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability *unless* there is 'clea[r] and unmistakabl[e]' evidence that they did so.") (emphasis added); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[T]he question of arbitrability . . . is undeniably an issue for judicial determination. *Unless* the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").  If the court finds such a clear and unmistakable delegation, the remaining questions as to scope, , interpretation, and enforcement would be for the arbitrator to decide.   There is, however, an unusual wrinkle in this case.  Here, Rose contends that the Arbitration Clause does not apply to this dispute because it is limited to accounting issues; since the delegation provision is contained within the Arbitration Clause, if the Arbitration Clause does not apply, neither does the delegation provision.  There is a circularity that normally does not exist where there is a standalone delegation provision.  Therefore, in this case, the Court must determine the threshold question whether the Arbitration Clause (and delegation provision therein) applies to the dispute at hand before determining whether the parties intended to delegate other questions of arbitrability.  If the Arbitration Clause is limited to accounting issues as Rose contends, then the Clause – and the delegation provision contained within it – would not apply.

As explained, *infra*, the Court finds that the Arbitration Clause is not limited to accounting dispute, and thus the instant dispute falls within its scope.  Having found that the Arbitration Clause (and thus the putative delegation provision) applies here, the Court next must determine whether there is clear and unmistakable evidence that the parties intended to delegate adjudication of disputes concerning the validity and enforceability of the arbitration clause to the arbitrator.

*See Rent-A-Ctr.*, 561 U.S. at 80; *Brennan*, 796 F.3d at 1133.  For the reasons discussed *infra*, the Court finds the parties so intended.  Because Rose challenges the entire Arbitration Clause rather than the delegation provision specifically, the validity and enforceability of the Arbitration Clause is a matter for the arbitrator.  *See Rent-A-Ctr.*, 561 U.S. at 72; *Brennan*, 796 F.3d at 1133.

       3.    <u>Scope</u>

          a.    <u>Choice of Law</u>

Before determining the scope of the Arbitration Clause, the Court must address what law applies to interpret the Arbitration Clause.  *See In re United Parcel Serv., Air-In-Ground Mktg. & Sales Practices Litig.*, 580 F. App'x 543, 544 (9th Cir. 2014) (noting that it could not review district court's dismissal of contract claims because district court had not first made a ruling on choice of law).

Subject matter jurisdiction in this case rests on diversity.  *See* Compl. ¶¶ 1-3 "In diversity jurisdiction cases, such as this one, [the court] 'appl[ies] the substantive law of the forum in which the court is located, including the forum's choice of law rules.'"  *First Intercont'l Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015).  Accordingly, the Court applies California's choice of law rules.

Here, the parties ask the Court to interpret certain portions of their Agreements.  *See* Opp. at 11-12; Reply at 8.  California Civil Code section 1646 "govern[s] the *interpretation* of a contract."  *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1443 (2007).  That code section provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  Cal. Civ. Code § 1646.

California courts have held that insurance policies are performed at "the place of the insured risk."  *Frontier Oil*, 153 Cal. App. 4th at 1461.  Here, Rose is the insured.  Rose is located and does business only in California.  Since the Agreements relate to workers' compensation insurance, "the place of the insured risk" is where Rose has its employees: California.  California is therefore the "place where [the agreement] is to be performed," and the Court applies California

1    law in interpreting the parties' contract.[1]

2          b.    <u>This Dispute Comes Within the Scope of the Arbitration Clause</u>

3          Rose argues that the Arbitration Clause – and therefore the delegation provision therein –

4    applies only to accounting issues.  Opp. at 10.  AUCRA contends the Arbitration Clause applies to

5    all disputes between the parties.  Reply at 7.  On the one hand, the Arbitration Clause states it "is

6    only intended to provide a mechanism for resolving accounting disputes in good faith."  Pl.'s Ex. 3 ¶

7    13; Pl.'s Ex. 8 ¶ 13. On the other hand, the Clause also provides that the arbitrator will decide

8                All disputes between the parties relating in any way to (1) the
             execution and delivery, construction or enforceability of this
9             Agreement, (2) the management or operations of the Company, or
             (3) any other breach or claimed breach of this Agreement or the
10            transactions contemplated herein . . . .

11   Pl.'s Ex. 3 at ¶ 13(B).[2]

12         Where there appear to be specific, inconsistent portions, courts must look to the contract as

13   a whole: "The whole of a contract is to be taken together, so as to give effect to every part, if

14   reasonably practicable, each clause helping to interpret the other."  Cal. Civ. Code § 1641.

15   "Particular clauses of a contract are subordinate to its general intent."  *Id.* § 1650.  "Words in a

16   contract which are wholly inconsistent with its nature, or with the main intention of the parties, are

17   to be rejected."  *Id.* § 1653.  Moreover, in interpreting contracts, courts are to avoid creating "an

18   absurdity."  *Id.* § 1638.

19         Taken as a whole, the Arbitration Clause was intended to govern all disputes arising from

20   the parties' commercial transaction, not merely accounting disputes.  First, as AUCRA notes, the

21   sentence upon which Rose relies follows a sentence addressing due dates.  The first paragraph of

22   ¶ 13 states,

23

24   _____

     [1] As will be seen, *infra*, under California's interpretation principles, the Arbitration Clause applies
25   here.  Because the Clause applies and the parties did not specify a "nonfederal arbitrability law,"
     "federal law governs the arbitrability question by default because the Agreement is covered by the
26   FAA."  *Brennan*, 796 F.3d at 1129.  Thus, the Court applies California law to determine that this
     dispute falls within the scope of the Arbitration Clause.  Once the Court has so determined, it
27   applies federal law to determine the enforceability of the Clause itself.

28   [2] The Agreements are identical in all relevant respects.  From here, the Court refers only to Exhibit
     3 for ease of reading.

**United States District Court**
For the Northern District of California

> Nothing in this section shall be deemed to amend or alter the due
> date of any obligation under this Agreement.  Rather, this section is
> only intended to provide a mechanism for resolving accounting
> disputes in good faith.

Pl.'s Ex. 3 ¶ 13.  That the second sentence (pertaining to arbitration of accounting dispute) begins

with the contradistinctive word, "rather," suggests that it modifies and is tied to the first sentence.

Thus, the most natural reading of this paragraph is: any deadlines provided in the Arbitration

Clause do not modify the due dates of the parties' obligations under the Agreement.

Consequently, although the statement about accounting disputes appears in the first paragraph of

¶ 13 ahead of various subparagraphs, its meaning is not as broad as the structure of ¶ 13 might

otherwise suggest.

  The limited nature of the sentence relied upon by AUCRA is underscored by the breadth of

the subparagraphs which follow; they contain broad language which negates the notion that the

first paragraph was meant to restrict the overarching scope of ¶ 13 to accounting disputes.

  Subsection (B) of ¶ 13 states binding arbitration applies to, *inter alia*, "[a]ll disputes

between the parties relating in any way to . . . any other breach or claimed breach of this

Agreement or the transactions contemplated herein . . . ."  *Id.* ¶ 13(B).  "Agreement" is a defined

term in the contract between the parties, and refers to the entire "reinsurance participation

agreement."  *Id.* at 1.  Nothing in this provision suggests arbitration is limited to accounting

disputes.  For example, the Arbitration Clause expressly applies to disputes regarding "the

execution and delivery" of the Agreements, and to "the management or operations of" AUCRA.

*Id.* ¶ 13(B).  Moreover, the Arbitration Clause makes repeated reference to "any disputes" and "all

disputes."  *See* Pl.'s Ex. 3 ¶ 13(A) ("any disputes"), (B) ("all disputes").  This is significantly

broader than accounting disputes.

  The Arbitration Clause, read as a whole, reveals a "general intent" that the Arbitration

Clause apply broadly to all disputes arising from the parties' Agreement.  *See id.* § 1650.

  Rose argues the Court should ignore these interpretive principles, because California

requires contract ambiguities to be construed against the drafter.  Cal. Civ. Code § 1654.

However, this applies "[i]n cases of uncertainty not removed by the preceding rules."  *Id.*  At least

four rules of contract interpretation instruct this Court to consider the contract as a whole, and

each of these codes precedes section 1654.  *See* Cal. Civ. Code §§ 1638, 1641, 1650, 1653. Applying these code sections first, as section 1654 instructs the Court to do, "remove[s]" the ambiguity.  The Court therefore need not resort to section 1654.

The Court holds that the Arbitration Clause applies to all disputes between the parties, and thus that the instant dispute falls within the Arbitration Clause.  Because the Arbitration Clause applies, so does the delegation provision.

### 4. The Delegation Provision is Clear and Unmistakable and Enforceable

When deciding whether a dispute is arbitrable, a court must first "resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). These issues "typically concern" an arbitration clause's enforceability.  *Id.*  However, as noted above, the parties may "agree[] to arbitrate threshold issues" such as enforceability.  *Rent-A-Ctr.*, 561 U.S. at 68.  When the parties reach such an agreement, the court "*must* enforce it" unless the delegation provision itself is specifically challenged in which case the Court must decide the issue. *Id.* at 72 (emphasis added).

#### a. The Delegation Provision is Clear and Unmistakable

Rose contends that the Agreements "do not contain any language which expressly delegates to the arbitrator the question of whether a particular dispute is arbitrable."  Opp. at 6. However, the Agreements contain a delegation provision similar to those found sufficient in *Rent-A-Center* and *Brennan*; it also incorporates the American Arbitration Association ("AAA") rules by reference, which has been found equivalent to a delegation provision.

##### i. Similar Provisions Have Been Interpreted to Delegate Arbitrability to the Arbitration

Rose argues that the delegation provision here is not "clear and unmistakable."  Opp. at 6. However, courts have enforced similar delegation provisions.

In *Rent-A-Center*, the parties' agreement provided that "'[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

including, but not limited to any claim that all or any part of this Agreement is void or voidable.'" 561 U.S. at 66.  The Supreme Court held that this delegation provision was sufficiently clear to empower the arbitrator to decide whether the agreement was enforceable.  *Id*. at 72.  Because the employee challenged the agreement to arbitrate as a whole rather than the delegation provision specifically, the delegation provision was enforceable and it was up to the arbitrator to determine whether the agreement to arbitrate as a whole was enforceable.  *Id*. at 75-76.  *See Brennan*, 796 F.3d at 1133 (arbitration to decide arguments attacking arbitration clause or contract as a whole rather than "arguments specific to the delegation provision.").

Here, the Arbitration Clause here provides that the arbitrator will decide the "construction [and] enforceability of this Agreement."  Pl.'s Ex. 3 ¶ 13(B).  As in *Rent-A-Center*, questions as to the "enforceability" of the arbitration clause were expressly delegated to the arbitrator.

Rose points to a paragraph which allows AUCRA to pursue injunctive relief in court, and argues this paragraph conflicts with the delegation provision, rendering the whole confusing. Opp. at 6 (citing Pl.'s Ex. 3 ¶ 13(M)).  But the Ninth Circuit has found the opposite.  In *Oracle America, Inc. v. Myriad Group A.G.*, the Ninth Circuit examined a carve-out allowing the parties to vindicate their intellectual property rights in court.  724 F.3d 1069, 1075 (9th Cir. 2013).  The court held that this carve-out went to the scope of the arbitration clause rather than to who decided arbitrability.  *Id*. at 1076.  In other words, the carve-out meant that the intellectual property rights were not arbitrable, but did not affect the delegation provision as to other claims.  *Id*.; *accord Bitstamp Ltd. v. Ripple Labs Inc.*, No. 15-CV-01503-WHO, 2015 WL 4692418, at *5 (N.D. Cal. Aug. 6, 2015).  The same reasoning applies here.  The fact that injunctive relief may be pursued in court does not conflict with or undermine the delegation provision as to issues not carved out.

While Rose cites a case from this Court and cases from California courts finding that a carve-out conflicted with a delegation provision, those cases are distinguishable because the contracts in those cases gave broad coextensive jurisdiction to the arbitrator and the court.  *See, e.g.*, *Hartley v. Super. Ct.*, 196 Cal. App. 4th 1249, 1257 (2011) (referring to the power of the "trier of fact" to determine "*any* provision of this Agreement") (emphasis added).  Here, the carve-out here is limited to injunctive relief sought by AUCRA.  It is thus not coextensive with the "all

**United States District Court**
For the Northern District of California

disputes" that are arbitrable.  Where a prefatory statement "eliminate[s] the inconsistency between the general delegation provision and the specific carve-out," courts find that the carve-out does not invalidate the delegation provision.  *See Mohamed v. Uber Techs*., -- F.3d --, 2016 WL 4651409 at *4 (9th Cir. Sept. 7, 2016).  While the carve-out makes AUCRA's claims for injunctive relief non-arbitrable, those claims are not at issue here.

In sum, the Arbitration Clause contains a clear and unmistakable delegation provision.

### ii.  The Incorporation of the AAA Rules is Also a Clear and Unmistakable Delegation Provision

Additionally, the Arbitration Clause incorporates the AAA rules.  In *Brennan* an employee argued the arbitration clause was unconscionable and therefore could not be enforced.  The Ninth Circuit held that, because the parties had incorporated the AAA rules, they had "agreed to arbitrate arbitrability."  *Brennan*, 796 F.3d at 1130.  The court so held because "one of [the AAA rules] provides that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the ... validity of the arbitration agreement.'"  *Id*.  By incorporating this rule, the parties had agreed to have the arbitrator decide these issues.  *See id*.  The Ninth Circuit therefore construed this incorporation to be an express delegation provision.  796 F.3d at 1130.[3]  As in *Brennan*, the Arbitration Clause here provides that "[a]ny dispute or controversy . . . shall be fully determined . . . under the provisions of the American Arbitration Association."  Pl.'s Ex. 3 ¶ 13(A).

Rose argues that if a party is unsophisticated, incorporation of the AAA's rules does not effectuate delegation.  Opp. at 7.  He relies on opinions by Judge Tigar and Judge Koh, both of this District, who have concluded that a court "should first consider the position of th[e] parties" when evaluating a delegation provision.  *Meadows v. Dickey's Barbecue Rests.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015); *Vargas v. Delivery Outsourcing, LLC*, No. 15-CV-03408-JST, 2016 WL 946112, at *7 (N.D. Cal. Mar. 14, 2016) (same); *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-

---

[3] *Accord Oracle Am.*, 724 F.3d at 1074 ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") (applying this principle to UNCITRAL rules).

United States District Court
For the Northern District of California

05682-LHK, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014), *aff'd on other grounds*, -- F.3d --, 2016 WL 4437615 (9th Cir. Aug. 23, 2016).  However, Rose is far more sophisticated than were the plaintiffs in *Meadows*, *Vargas*, and *Tompkins*. [4]  AUCRA has submitted evidence that Rose had $9 million in payroll in 2009 and $14 million in 2012, which "extrapolates to millions of dollars in revenue."  Reply at 5.  Rose reviewed the agreements before signing.  *See* Opp. at 7 (discussing Mr. Rose's understanding of the reference to AAA rules).  Moreover, Rose was also represented by a broker when entering into the Agreements.  *Id.*

By contrast, in *Meadows*, the plaintiffs were employees "asked to sign a complicated, 60-page agreement."  144 F. Supp. 3d at 1078-79.  "Neither [plaintiff] had prior experience running a business or owning a franchise."  *Id.* at 1079.  In *Vargas*, the plaintiff was "an unsophisticated luggage delivery driver," who had limited proficiency in English and who did not even have a chance to review the documents before executing them.  2016 WL 946112, at *8.  In *Tompkins*, the plaintiffs were consumers asked to accept arbitration agreements contained in a "click-through" contract, and the contract purported to bind even consumers who clicked "accept" without being asked to read the contract and anyone who visited the defendant's website.  2014 WL 2903752, at *12.

Unlike the plaintiffs in *Meadows*, *Vargas*, and *Tompkins*, Rose is a business entity, accustomed to entering into agreements, who actually read the Agreements here and had available the advice of someone who understood and worked in insurance.  These circumstances do not warrant invalidating the delegation provision.  *Accord Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *6 (N.D. Cal. Mar. 18, 2016) (upholding a delegation provision where the plaintiff "was at least minimally sophisticated . . . [and] a savvy entrepreneur in his own right, given his other dealings in the business world").

---

[4] It is unclear whether sophistication is required in the Ninth Circuit.  In *Brennan*, the Ninth Circuit did not decide whether parties must be sophisticated to enforce a delegation provision, but hinted sophistication may not matter.  796 F.3d at 1130 ("our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties").

**United States District Court**
For the Northern District of California

b.  Enforceability of the Agreements and the Arbitration Clause Must be
Decided by the Arbitrator

Under the terms of the Arbitration Clause, the arbitrator has the sole power to determine the "enforceability of [the] Agreement" and all its provisions. *See* Pl.'s Ex. 3 at ¶ 13(B). Rose argues that in addition to being vague, the delegation provision cannot be enforced because the Agreements themselves are unlawful. Opp. at 8-9. Rose contends the Agreements are "illegal and void" because they "violate Insurance Code § 11658." *Id*. at 9. That code section requires insurance policies to be submitted to the California Department of Insurance for approval before they are issued to insureds. *See* Cal. Ins. Code § 11658.

Rose argues that where an arbitration clause is contained in an unlawful contract, California requires courts to refuse to order arbitration. Opp. at 9 (citing *Loving & Evans v. Blick*, 33 Cal. 2d 603, 610 (1949) ("the power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise.")); *see also Hotels Nev., LLC v. Bridge Banc, LLC*, 130 Cal. App. 4th 1431, 1436 (2005) (recognizing the rule comes from California law). However, this argument relies on outdated decisions.

In *Buckeye Check Cashing, Inc. v. Cardegna*, the United States Supreme Court "decide[d] whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality." 546 U.S. 440, 444 (2006). The plaintiffs in that case argued the defendant "charged usurious interest rates" in violation of Florida law, and that this rendered the contract "criminal on its face." *Id*. at 443. The Court held that "an arbitration provision is severable from the remainder of the contract" and "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id*. at 445-46. Because the plaintiffs challenged the entire contract and "not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract." *Id*. at 446. Whether the contract was unlawful as a whole must "therefore be considered by an arbitrator, not a court." *Id*. In other words, the fact that the contract containing the arbitration clause might itself

**United States District Court**
For the Northern District of California

1  be illegal does not prevent the arbitrator from arbitrating the legality of the contract.[5]

2      Rose also argues that the Arbitration Clause itself is unlawful.  Opp. at 9-10.  Rose relies

3  solely on an unreported California appellate court decision which held that an arbitration clause

4  was void where it was added to the insurance policy well after the Department of Insurance

5  approved the policy, and approval was not re-sought for the new provision.  *See id.* (citing

6  *Ceradyne, Inc. v. Argonaut Ins. Co.*, No. G039873, 2009 WL 1526071 at *11-12 (Cal. Ct. App.

7  June 2, 2009)).  The Court cannot rely on that case here.  *See* Cal. R. Ct. 8.1115 (unreported

8  decisions "*must not* be cited or relied on by a court or a party in any other action.") (emphasis

9  added).  Federal courts have held an arbitrator must decide enforceability of an arbitration clause

10  where there is a valid delegation provision.  *See Rent-A-Center*, 561 U.S. at 72; *Brennan*, 796 F.3d

11  at 1133 (both noting that unconscionability questions go to the arbitrator); *accord, Mohamed*, --

12  F.3d --, 2016 WL 4651409.

13      Here, Rose challenges the entire Agreement and Arbitration Clause, not just the delegation

14  provision.  *See* Opp. at 10 ("the [Agreement] was not submitted to the [Department of Insurance]

15  for approval, and on that basis is void . . . the arbitration provision is contained in an unfiled

16  insurance form . . . .").  The legality of the Agreement and the Arbitration Clause are issues for the

17  arbitrator.

18          c.      Whether a Condition Precedent was Fulfilled is a Matter for the Arbitrator

19      Finally, Rose argues that the Arbitration Clause is not triggered because AUCRA did not

20  fulfill a condition precedent: to negotiate in good faith.  Opp. at 12.  AUCRA argues that this is

21  not in fact a condition precedent.  Reply at 6.  This is a matter of contract interpretation for the

22  arbitrator to decide.

23      Moreover, whether a condition precedent was in fact satisfied is also for the arbitrator to

24

25  [5] The Court went on to reject the argument that Florida law compelled a different outcome; the
   Federal Arbitration Act, not state law, regarding arbitration agreements controlled.  *Id.* at 446-448.

26  The Court has since reaffirmed this holding.  *See Preston v. Ferrer*, 552 U.S. 346, 359 (2008)
   ("When parties agree to arbitrate all questions arising under a contract, the FAA supersedes state

27  laws lodging primary jurisdiction in another forum, whether judicial or administrative."); *Nitro-
   Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012) ("attacks on the validity of the contract,

28  as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the
   arbitrator in the first instance, not by a federal or state court.'").

**United States District Court**
For the Northern District of California

decide.  In *Howsam*, the United States Supreme Court examined the Revised Uniform Arbitration Act of 2000.  *See* 537 U.S. at 85.  It quoted a portion of that Act providing that "'prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.'"  *Id.* (quoting the Revised Uniform Arbitration Act § 6, comment 2).  Accordingly, the Court held that "the applicability of the NASD time limit rule is a matter presumptively for the arbitrator."  *Id.*  Courts of Appeals have observed that a condition precedent is similarly a "pre-condition to arbitration," satisfaction of which the arbitrator should decide.  *See Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 383 (1st Cir. 2011) ("assuming arguendo that the Arbitration Clause establishes such a pre-condition to arbitration, Appellants have not rebutted the presumption that the arbitrator should decide whether the parties complied with such a procedural pre-requisite to arbitration") (discussing a purported condition precedent); *accord Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 183 (3d Cir. 2010).

> 5.      Conclusion

For the reasons stated above, the Court **GRANTS** AUCRA's Motion.  The matter herein is referred to arbitration.

This order disposes of Docket No. 12.


**IT IS SO ORDERED**.


Dated: September 28, 2016

_____
EDWARD M. CHEN
United States District Judge

16