# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE ROSE'S AUTO BODY, INC., <br> Plaintiff, <br> v. <br> APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC., <br> Defendant. | Case No. 16-cv-01864-EMC <br><br> **ORDER RE PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD AND DEFENDANT'S MOTION TO VACATE ARBITRATION AWARD** <br><br> Docket Nos. 62, 64 |

Plaintiff Mike Rose's Auto Body, Inc. ("MRAB") entered into two contracts with Defendant Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA"), pursuant to which AUCRA provided workers' compensation insurance to MRAB. MRAB brought suit over fees AUCRA attempted to charge in relation to the two contracts. The parties engaged in arbitration that resulted in a final arbitration award ("Final Award") in March 2018. MRAB moved to confirm the Final Award. Because an outstanding issue remained regarding the second contract, this Court remanded the issue to the arbitrator to resolve in the first instance. In January 2019, the arbitrator issued a decision on remand ("Remand Order"). MRAB now moves to confirm the Final Award and Remand Order, whereas AUCRA moves to vacate the Remand Order. *See* Docket Nos. 62 ("Pl. Mot."), 64 ("Def. Mot.").

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** both motions. The Final Award, as supplemented by the Remand Order, is confirmed in full with the exception of the Remand Order provision increasing the interest rate applied to sums owed under the first RPA.

**I. BACKGROUND**

A. Factual Background

MRAB entered into two Reinsurance Participation Agreements ("RPAs") for workers' compensation insurance with AUCRA. The first RPA was entered into on October 1, 2009, and the second on October 1, 2012. Docket No. 1 ("Compl.") ¶¶ 11, 19. Each RPA had a three-year term. *See* Docket No. 68-2, Exh. A (2009 RPA), Exh. B (2012 RPA). Under the RPAs, MRAB deposited money into a "cell" to pay employees' workers' compensation claims. Compl. ¶ 13.

In February 2013, following the expiration of the first RPA and the closing of all claims it covered, MRAB demanded that AUCRA reimburse the $79,167 remaining in the cell. *Id*. ¶ 17. AUCRA refused.

In 2015, following the expiration of the second RPA, AUCRA sent a statement informing MRAB that it owed $361,000 in additional collateral. *Id*. ¶ 23. The statement explained that the amount was "due based on [MRAB's] actual claims applying run-off Loss Development Factors (LDFs) and an additional capital deposit of $44,441." *Id*. "Loss Development Factors" are factors AUCRA uses to calculate the potential costs associated with workers' compensation claims that may continue to accrue after the end of the active period of the RPA. *Id.* ¶¶ 12, 23–24. Once an RPA expires, AUCRA applies LDFs to each open and closed claim to determine whether the employer needs to pay additional collateral to cover the potential future costs of claims. At this time, two claims under the second RPA remain active. *See* Remand Order at 3. MRAB refused to pay the $361,000 requested by AUCRA. Compl. ¶ 23.

B. Procedural Background

In April 2016, MRAB filed a complaint against AUCRA seeking a declaration that both RPAs are void and unenforceable, that MRAB is entitled to rescission, that MRAB owes AUCRA no money, and that AUCRA owes MRAB $79,167. *See* Compl. at 7–12. The complaint also sought disgorgement of the money MRAB paid to AUCRA under the RPAs and damages for fraud, breach of contract, and unfair business practices. *See id.* AUCRA moved to compel arbitration pursuant to the arbitration clause in the RPAs. Docket No. 12. This Court granted AUCRA's motion to compel arbitration. Docket No. 29.

#### 1. Interim Order

In December 2017, the arbitrator issued an interim order in which he ruled, *inter alia*, that the RPAs were valid and enforceable. *See* Docket No. 62-1, Exh. A ("Interim Order") at 3.

#### 2. Final Award

On March 19, 2018, the arbitrator issued the Final Award, which expressly incorporated by reference the Interim Order. *Id.*, Exh. B at 3. The Final Award ordered the following:

(1) AUCRA shall pay MRAB $79,167.00 and any return premium due on the first RPA.

(2) AUCRA's claim for $361,024.41 on the second RPA is denied.

(3) AUCRA is prohibited from using "Run-off Loss Development Factors" to calculate the amount owed by MRAB for claims under the second RPA. Instead, AURCA must calculate the amount owed using "Weekly Open Claims and Closed Claims Loss Development Factors." Any return premium generated by the application of the revised LDF calculation will be paid to MRAB.

(4) The amounts specified were due January 10, 2018, and subject to a 5% simple interest rate accruing beginning at January 10, 2018.

(5) Each party will bear the cost of its own legal fees.

(6) The administrative fees and expenses of the arbitration proceeding, totaling $5,750.00, and the compensation and expenses of the arbitrator, totaling $21,250.00, shall be borne by both parties equally. Therefore, MRAB shall reimburse AUCRA the sum of $1,125.01, representing the portion of said fees and expenses in excess of the apportioned costs previously incurred by AUCRA.

*Id*. at 3–4.

AUCRA did not comply with the Final Award, and MRAB moved to confirm it. Docket No. 56. However, the parties continued to dispute how to perform the LDF calculations for the second RPA. The Court accordingly denied MRAB's motion to confirm the Final Award without prejudice and remanded the dispute to the arbitrator for the limited purpose of resolving the outstanding issue:

> [T]he matter is remanded to the arbitrator to resolve in the first instance the Parties' dispute over specific calculations for claims under the second Reinsurance Participation Agreement (Plan Period 10/1/12 to 10/1/15) discussed on page 3 of the Interim Order and pages 3–4 of the Final Award. Accordingly, Plaintiff's petition to confirm the arbitration award . . . is DENIED as premature, and without prejudice to a further petition once the arbitrator has addressed the instant dispute and concluded all matters before him.

Docket No. 60.

### 3. Remand Order

On remand, the arbitrator conducted an initial conference call in which he discussed with the parties "the scope of the remand and the general status of the case, along with claims status and billing related to the second plan." Docket No. 68-2 ¶ 2. Over the course of December 2018 and January 2019, the arbitrator sent several emails to the parties requesting information about the mechanics of the RPAs. *See* Docket No. 68-1, Exhs. 17, 25, 27. During this period, AUCRA thrice suggested that the arbitrator schedule a hearing to address the issues raised in his emails. *Id.*, Exhs. 29, 30, 39. The arbitrator declined to hold a hearing, indicating that he "believe[s] [he] has sufficient information to rule on this matter." *Id.*, Exh. 41 at 2.

On January 25, 2019, the arbitrator issued the Remand Order. Docket No. 62-1, Exh. D ("Disposition of Application and Remand"). The arbitrator stated that in the Final Award, he had "erred in assuming that only the Run-Off Loss Development Factors . . . could increase the amount potentially due under AUCRA's calculations." *Id.* at 2. In fact, "[t]wo other factors potentially come into play," including whether it was appropriate to "[a]pply[] the LDFs in schedule 1 of the second RPA beyond the 36-month cut-off." *Id.* The arbitrator determined that "the LDFs in Schedule 1 of the RPA do not apply past 36 months"—that is, AUCRA cannot apply LDFs in calculating ultimate claim costs for any claims older than 36 months. *Id.*

///
///
///
///
///

4

Accordingly, the arbitrator declined to apply LDFs to claims older than 36 months under the second RPA and recalculated the current charges under the second RPA as follows:

| | |
|---|---|
| Total Paid by MRAB | $1,439,090 |
| Outstanding Loss Reserves | ($179,585) |
| Paid Losses | ($649,920) |
| Base Fee to AUCRA | ($438,853) |
| Taxes and Assessments | ($66,904) |
| Total Deductions | ($1,335,262) |
| Funds available to be returned to MRAB | $103,828 |

*Id.* at 2–3. The figure in the last row of the table reflects that MRAB paid $103,828 into the plan that was not needed to cover any claims or plan costs.

The Remand Order ultimately ordered the following:

1. AUCRA's request for additional collateral of $360,535.16 is denied;

2. Within thirty (30) days from the date of transmittal of this Disposition of Application and Remand to the parties, AUCRA will pay MRAB the award owed from the first RPA period of $79,167, plus 5% interest from January 10, 2018. If not paid when due, the interest rate will become 10% simple interest per annum, until paid;

3. At the time of this award, AUCRA held $103,828 in additional funds above and beyond the two claim reserves. Within thirty (30) days from the date of transmittal of this Disposition of Application and Remand to the parties, AUCRA will pay MRAB $103,828. If AUCRA chooses to delay the payment of this amount, for additional collateral reasons, this amount will accrue at 10% simple interest from such date, until paid;

4. MRAB is not excused from fulfilling its contract if the second period of the RPA develops beyond the amounts currently reserved by AUCRA. AUCRA will have the right to reduce the amount due to be returned to MRAB by any additional paid losses above and beyond the amounts that currently exist (approximately $179,585). MRAB shall also benefit from any recovery above and beyond the current loss reserves, if any;

5

> 5. Within thirty (30) days from the date of transmittal of this Disposition of Application and Remand to the parties, AUCRA will return any capital deposits not returned or contained within the amounts stated in item #2 and #3 above. This amount (if any) will accrue at 10% simple interest from such date, until paid;
>
> 6. Article 11(L) of the RPA allows for the awarding of attorney fees, the cost of the arbitration and arbitration fees. Within thirty (30) days from the date of transmittal of this Disposition of Application and Remand to the parties, AUCRA will reimburse MRAB for attorney fees and expenses spent since March 19, 2018 pursuing its recovery, which are specifically associated with this application;
>
> 7. The administrative fees of the ICDR were waived and the compensation of the arbitrator totaling US$3,825.00 shall be borne by AUCRA. Therefore, AUCRA shall reimburse MRAB the sum of US$1,912.50, representing that portion of said compensation in excess of the apportioned costs previously incurred by MRAB.

*Id.* at 3–4.

AUCRA filed a motion to correct what it perceived as erroneous calculations underlying the Remand Order pursuant to the International Centre for Dispute Resolution ("ICDR") Procedures. *See* ICDR Art. 33.1 ("Within 30 days after the receipt of an award, any party, with notice to the other party, may request the arbitral tribunal to interpret the award or correct any clerical, typographical, or computational errors . . . ."); Docket No. 68-1, Exh. 46. The arbitrator denied the motion without comment. Docket No. 68-1, Exh. 53.

### 4. MRAB's Motion to Confirm and AUCRA's Motion to Vacate

On April 23, 2019, MRAB once more moved to confirm the Final Award, as supplemented by the Remand Order. *See* Pl. Mot. AUCRA opposed the motion, and separately filed a motion to vacate the Remand Order. *See* Docket No. 68; Def. Mot. Both motions are currently before the Court. AUCRA only moves to vacate the Remand Order; it does not seek to disturb any aspect of the Final Award. *See* Def. Mot. at 1.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the role of federal courts in reviewing arbitration decisions. Section 9 of the FAA provides that a federal district court "must" confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Judicial review of an arbitration award is thus "both limited

and highly deferential." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004)). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review" of an arbitration award under the FAA. *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (quoting *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009)).

The "burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.,* 591 F.3d 1167, 1173 (9th Cir. 2010). Section 10 of the FAA permits a court to vacate an award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3).

Vacatur is also warranted "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* § 10(a)(4). The Ninth Circuit has held that arbitrators "exceed their powers" when the award is "completely irrational" or exhibits a "manifest disregard of the law." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (internal citations omitted). An award is "completely irrational" "only where the arbitration decision fails to draw its essence from the agreement." *Comedy Club*, 553 F.3d at 1288. An arbitration award "draws its essence from the agreement" if the award is derived from the agreement, viewed "in light of the agreement's language and context, as well as other indications of the parties' intentions." *Bosack*, 586 F.3d at 1106. Under this standard of review, the district court does not assess the "rightness or wrongness" of the arbitrator's contract interpretation. *Id.* (quoting *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1024 (9th Cir. 1991)).

### III.     DISCUSSION

AUCRA asserts two grounds for vacating the Remand Order. First, AUCRA believes the arbitrator violated § 10(a)(3) when he denied AUCRA "an opportunity to be heard regarding the enforceability of the LDFs or the calculation of program charges if LDFs were ignored." Def.

7

Mot. at 12. Second, AUCRA argues the arbitrator violated § 10(a)(4) in "disregarding contract terms, ruling upon issues beyond the scope of the remand, and issuing an attorney fee award that failed to comply with [American Arbitration Association] rules." *Id.* at 15.

A.   <u>Refusing to Hear Evidence</u>

A court can vacate an arbitration decision "where the arbitrator[] w[as] guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). AUCRA complains that the arbitrator refused to hear pertinent evidence before ruling in the Remand Order that no LDFs can be applied to claims older than 36 months, and gave no indication to the parties that he was intending to so rule. Def. Mot. at 12. According to AUCRA, had the arbitrator signaled that he was concerned about the enforceability of the LDFs, AUCRA would have submitted pertinent materials addressing "whether this interpretation is reasonable in light of the contract language as a whole and the circumstances of the case," "extrinsic evidence that could bear on interpretation of the RPA," "the parties' course of dealing and course of performance," and "trade usages in the industry." *Id.* at 13–14.

Arbitrators enjoy "wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit," so long as they give "each of the parties to the dispute an 'adequate opportunity to present its evidence and arguments.'" *U.S. Life Ins.*, 591 F.3d at 1175 (quoting *Sunshine Mining Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1295 (9th Cir. 1987)). The arbitrator acted within his discretion in admitting evidence relevant to the proceedings on remand, and at no point did he exclude any evidence. To begin with, in the extensive proceedings leading up to the Final Award, the parties had already engaged in written discovery, agreed to submit written briefs in lieu of conducting an in-person hearing, and submitted evidence in response to specific requests by the arbitrator. Pl. Mot. ¶¶ 15–17. Thus, although AUCRA faults the arbitrator for not conducting a full hearing on remand, the arbitrator already had the benefit of thorough factual and evidentiary development about the workings of the RPAs in the course of the prior proceedings.

The record further demonstrates that, far from refusing to hear evidence regarding the enforceability of the LDFs, the arbitrator specifically alerted the parties to his concern about

8

applying LDFs to claims older than 36 months and gave both parties an opportunity to respond. On December 16, 2018, the arbitrator emailed counsel asking: "Schedule 1, Table A shows LDF factors through Claim Age 36 months. What determines factors used by Applied for Claim Age months greater than 36 months?" Docket No. 68-1, Exh. 25. In response, counsel for AUCRA stated that "[t]he Weekly LDFs listed in the RPA stay the same after 36 months. Thus, after 36 months, they stay at 2.357 for open claims, and 1.032 for closed claims." *Id.*, Exh. 26. Counsel for MRAB disputed this explanation:

> [C]ontrary to the representation of counsel, Schedule 1 of the [RPA] . . . does not state that 'the Weekly LDFs listed in the RPA stay the same after 36 months.' It states the Weekly Loss Development Factors from month 00 to month 36, and is silent with respect to month 37 and thereafter. AUCRA is attempting to enforce an obligation not set forth in the contract.

*Id.*, Exh. 28. Counsel for AUCRA responded by bringing up, among other points, the course of dealing between the parties:

> [T]here is nothing improper with respect to the LDFs used to calculate reserves, including those applied to claims older than 36 months. It makes no sense to assume that the LDFs will just fall away after three years considering that workers' compensation claims have a long tail. Mike Rose also has received Plan Analyses for multiple years showing LDFs being applied to claims older than 36 months. In addition, the RPA expressly states that the LDFs will be applied to all claims, and that the LDFs are subject to change without notice. . . . Under the circumstances, Mike Rose cannot reasonably argue that LDFs may not be used after 36 months.

*Id.*, Exh. 30.

AUCRA therefore had ample opportunity to address the contention that LDFs cannot be applied beyond 36 months and make the case for its interpretation of the RPA. The Remand Order reflects that the arbitrator did not ignore the parties' arguments. To the contrary, after hearing the parties' arguments, he endorsed MRAB's reading of the RPA, concluding that "the LDFs in Schedule 1 of the RPA do not apply past 36 months." Remand Order at 2.

Tellingly, AUCRA does not allege that it sought to submit any evidence that the arbitrator refused to consider. *See Schoenduve Corp. v. Lucent Techs., Inc.*, No. C03-03523 RMW, 2004 WL 5573951, at *9 (N.D. Cal. Feb. 27, 2004) (denying motion to vacate under § 10(a)(3) where

the movant "fail[ed] to point to any evidence that the arbitrator actually *refused* to hear") (emphasis in original), *aff'd*, 442 F.3d 727 (9th Cir. 2006). Nor does AUCRA point to any facts indicating that the arbitrator's decision not to hold a full hearing amounts to "misconduct" within the meaning of § 10(a)(3). *See Immersion Corp. v. Sony Computer Entm't Am. LLC*, 188 F. Supp. 3d 960, 974 (N.D. Cal. 2016) ("To meet the standard for vacating the award, the arbitrator's refusal to hear evidence 'must demonstrate bad faith or be so gross as to amount to affirmative misconduct.'") (quoting *United Paperworkers Int'l Union, AFLCIO v. Misco, Inc.,* 484 U.S. 29, 40 (1987)). In fact, the arbitrator did not deny AUCRA's hearing request out of hand. He acknowledged the request and asked for MRAB's view. *See* Docket No. 68-1, Exh. 32. MRAB's counsel stated that he "does not believe a hearing is necessary." *Id.*, Exh. 37. The arbitrator then informed counsel, "I believe I have sufficient information to rule on this matter." *Id.*, Exh. 41. He nevertheless gave the parties one more chance to submit additional materials: "I plan to declare the hearing record closed tomorrow and deny the request for a hearing. If anyone has anything further to add to the record, I will postpone this." *Id.* AUCRA did not supplement the record further.

Thus, AUCRA had an "adequate opportunity to present its evidence and arguments." *U.S. Life Ins.*, 591 F.3d at 1175. None of the cases cited by AUCRA suggest that it was entitled to anything more. For instance, in *U.S. Life Insurance*, the arbitration panel consulted neutral experts in an *ex parte* meeting outside of the presence of the parties to resolve certain issues in dispute. *Id.* at 1171–72. The Ninth Circuit held that the arbitration process did not violate § 10(a)(3) because the parties were subsequently allowed to review the experts' written conclusions, submit briefing addressing the conclusions, and question the experts about their qualifications and conclusions. *Id.* at 1174–75. But court nowhere indicated that the procedures there—which were necessitated by unique factual circumstances—were mandated under the FAA. In *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985 (3d Cir. 1997), the Third Circuit found that "the arbitrator made a fundamental procedural error in deciding the merits of the controversy after advising the parties that he would not do so until after he decided the procedural issues and until [appellee] had an opportunity to present its case on the merits." *Id.* at 996. Unlike that arbitrator, the arbitrator here did not "t[ell] the parties one thing and . . . d[o] another." *Id.* In *Teamsters,*

10

*Chauffeurs, Warehousemen & Helpers, Local Union No. 506 v. E.D. Clapp Corp.*, 551 F. Supp. 570 (N.D.N.Y. 1982), after the arbitration hearing "ended abruptly due to disturbances," one side was "not given an opportunity to complete its presentation of proof." *Id.* at 577–78. In this case, in contrast, MRAB and AUCRA both were given the opportunity to present their arguments regarding the LDF issue. Finally, in *Harvey Aluminum (Inc.) v. United Steelworkers of Am., AFL-CIO*, 263 F. Supp. 488 (C.D. Cal. 1967), the arbitrator erred by excluding the testimony of a witness based on evidentiary rules he had never notified the parties would be applied. *Id.* at 493. The arbitrator here did not exclude any evidence submitted by AUCRA, much less do so without fair warning.

The record belies AUCRA's claim that the arbitrator, in declining to apply any LDFs to claims older than 36 months, was "guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). Accordingly, AUCRA's motion to vacate on this ground is **DENIED**.

B. <u>Exceeding Arbitrator's Authority</u>

An arbitration award can be also vacated "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). Arbitrators "exceed their powers" when their decision is "completely irrational" or exhibits a "manifest disregard of the law." *Kyocera*, 341 F.3d at 997. AUCRA claims that the arbitrator exceeded his powers in issuing the Remand Order by "disregarding contract terms, ruling upon issues beyond the scope of the remand, and issuing an attorney fee award that failed to comply with [American Arbitration Association] rules." Def. Mot. at 15.

1. <u>Disregarding the Terms of the RPA</u>

AUCRA contends that the arbitrator disregarded the terms of the RPA in calculating the program charges in the Remand Order in two ways. First, he did not apply any LDFs to claims older than 36 months even though the "RPA states that [LDFs] would be applied to all claims, and that the LDFs are subject to change without notice." *Id.* at 16. Second, "in calculating program charges without using LDFs, the arbitrator disregarded the RPA's capital deposit requirement and failed to take into account how the change in loss ratios would affect the base fee." *Id.* At bottom, these arguments take issue with the arbitrator's substantive interpretation of the RPA. The

11

1 arguments are unpersuasive.

                     a.        <u>Applying LDFs to Claims Older Than 36 Months</u>

It is apparent from the Remand Order that the arbitrator determined that LDFs cannot be applied past 36 months by interpreting and applying the terms of the RPA, not by disregarding them. As discussed in the previous section, the arbitrator noted that "Schedule 1, Table A [of the second RPA] shows LDF factors through Claim Age 36 months," but ended at 36 months. Docket No. 68-1, Exh. 25. He therefore asked the parties, "What determines factors used by Applied for Claim Age months greater than 36 months?" *Id.* AUCRA responded that the same LDFs applied between 34 to 36 months continue to apply after 36 months, and submitted records showing that this was how AUCRA had been applying the LDFs to MRAB's claims. *See id.*, Exhs. 26, 30. MRAB disputed this characterization, and echoed the arbitrator's observation that the RPA "is silent with respect to month 37 and thereafter," and alleged that "AUCRA is attempting to enforce an obligation not set forth in the contract." *Id.*, Exh. 28.

The arbitrator ultimately concluded that "the LDFs in Schedule 1 of the RPA do not apply past 36 months." Remand Order at 2. It is clear that his conclusion turned on the express terms of the RPA—that, on the face of Schedule 1, the LDFs do not extend past 36 months. AUCRA complains the arbitrator did not explicitly address its arguments about the parties' course of dealing in the Remand Order, but an arbitrator's award "may be made without explanation of the reasons and without a complete record of [the] proceedings." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 666 (9th Cir. 2012).

AUCRA claims that the arbitrator disregarded an express provision of the RPA that makes clear that the LDFs continue to be applicable beyond 36 months. That provision merely states that AUCRA "will calculate loss development factors ('LDF's') for each loss under the Policies." Docket No. 62-1, Exh. G, Sched. 1 ¶ 1(b). It does not specify that LDFs will be applied to each claim indefinitely. It makes the commonsense point AUCRA will calculate LDFs for each claim, which it undisputedly does for claims between 0 and 36 months. AUCRA also points out that the same provision cautions that "LDF's are subject to change without notice." *Id.* However, the arbitrator observed that the RPA specifically provides that "any *Schedules* hereto may not be

12

modified, amended or supplemented in any manner except in writing signed by the parties." *Id.* § 4 (emphasis added). Thus, to extend the LDF schedule past 36 months (as opposed to merely changing the LDF rates), a written amendment would have been required. *See* Remand Order at 2. Because "[n]o such amendment has been produced in this matter," the arbitrator concluded that AUCRA cannot simply apply LDFs to claims older than 36 months without notice to MRAB. *Id.*

In short, the arbitrator did not disregard express terms of the RPA, but rather disagreed with AUCRA's interpretation of them. This case is thus different from *Aspic Engineering* on which AUCRA heavily relies. There, the Ninth Circuit held that an arbitrator had exceeded his authority and issued an "irrational" award because he "disregarded specific provisions of the plain text [of the contracts at issue] in an effort to prevent what the Arbitrator deemed an unfair result." *Aspic Eng'g*, 913 F.3d at 1168. The arbitrator in *Aspic Engineering* acknowledged that an express contractual provision obligated the plaintiff to comply with certain federal regulations, but refused to give effect to the provisions because he considered it "unjust" to enforce the regulations against "a seemingly less sophisticated contractor." *Id.* In contrast, the arbitrator here did not displace express terms of the RPA with his own notions of fairness. His decision drew its essence from the RPA, as § 10(a)(4) requires.

b. Calculating Charges Without LDFs

AUCRA next argues that the arbitrator disregarded terms of the RPA in calculating two other charges MRAB owed to AUCRA under the second RPA—the "capital deposit," and the "base fee." Per the RPA, the capital deposit is 10% of the "Estimated Annual Loss Pick Containment Amount."[1] Docket No. 62-1, Exh. G, Sched. 1 ¶ 3. The base fee is "equal to the premium earned under the Policies in excess of the Loss Pick Containment Amount multiplied by the applicable Exposure Group Adjustment Factor multiplied by the Allocation Factor."[2] *Id.* ¶ 2. There is no dispute that MRAB was required to pay AUCRA a capital deposit and base fee.

---

[1] The "Loss Pick Containment Amount" is the estimated total cost of MRAB's workers' compensation claims over the course of a year. Docket No. 62-1, Exh. G, Sched. 1 ¶ 1(a).

[2] The "Exposure Group Adjustment Factor" and "Allocation Factor" are both listed in Table B of Schedule 1.

13

However, AUCRA contends that in the Remand Order, the arbitrator: (1) neglected to include the capital deposit at all, and (2) failed to account for the fact that eliminating LDFs for claims older than 36 months affects the calculation for the base fee. After the Remand Order issued, AUCRA moved the arbitrator to correct these "computational errors." Docket No. 68-1, Exh. 46 at 6. The arbitrator denied the request. *Id.*, Exh. 53. AUCRA now argues that these computational errors reflect that the arbitrator exceeded his authority in issuing the Remand Order.

The capital deposit issue is fairly straightforward. Per AUCRA's uncontroverted calculation, the capital deposit for the second RPA should be $44,429 (*i.e.*, 10% of the Loss Pick Containment Amount of $444,287). Def. Mot. at 9. The breakdown of charges in the Remand Order for the second RPA does not contain an individual line item for the capital deposit. *See* Remand Order at 3. However, as MRAB noted, the breakdown *does* include an item denoted "Taxes and Assessments" for an amount of $66,904. *Id.* After AUCRA moved the arbitrator to recalculate the charges, MRAB pointed out that "Taxes and Assessments" appeared to subsume the capital deposit, as no other charge could account for that item. Docket No. 68-1, Exh. 50 at 3. MRAB made a request to the arbitrator that "the Disposition be modified to delete the 'Taxes and Assessments' amount and to include the capital deposit" if in fact that item did *not* include the capital deposit. *Id.* The arbitrator did not modify the Remand Order, suggesting that MRAB's understanding that the capital deposit was already included within the "Taxes and Assessments" amount was correct.

The base fee issue is more complicated. In the Remand Order, the arbitrator did not apply LDFs in calculating the collateral owed by MRAB under the second RPA because the two remaining active claims were both older than 36 months. However, the arbitrator did not then adjust the base fee. AUCRA sets forth at length why it believes this was error. *See* Def. Mot. at 9–11. Summarized briefly, AUCRA contends the base fee is calculated in part by reference to the Exposure Group Adjustment Factor, which in turn depends on the "loss ratio," which depends on the "ultimate loss," which depends on the LDFs. Thus, the arbitrator's decision not to apply the LDFs to the outstanding claims has a trickle-down effect on the other components of the base fee calculation and ultimately corresponds to a higher base fee ($499,442 instead of $438,853). *Id.* at

14

10–11.

AUCRA presented the same calculations to the arbitrator, who declined to modify the Remand Order to conform to them. Although the arbitrator did not explain why he did not adopt AUCRA's accounting, he could well have concluded that it would be inappropriate to retroactively adjust the base fee for a contract that had already ended. MRAB told the arbitrator that AUCRA's recalculation of the base fee is effectively "a new claim for a new amount of additional administrative fees requested approximately 40 months after the end of the coverage period." Docket No. 68-1, Exh. 50 at 2.

In any event, the arbitrator's decision is a matter of contract interpretation, because the calculation of the base fee turns on the interpretation of Schedule 1 of the RPA. "If on its face, the [arbitration] award presents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1271 (9th Cir. 2002). The Court has "no authority to vacate an award solely because of an alleged error in contract interpretation." *Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co.*, 933 F.2d 1481, 1485 (9th Cir. 1991). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* The arbitrator here was unquestionably acting within the scope of his authority in applying the RPA to calculate program charges. Accordingly, the arbitrator's decision not to retroactively adjust the base fee is not a basis for vacating the Remand Order. *See Thule AB v. Advanced Accessory Holding Corp.*, No. 09 CIV. 91 (PKC), 2009 WL 928307, at *3 (S.D.N.Y. Apr. 2, 2009) (finding that where a party disagreed with the arbitrator's calculation methods, but the arbitrator "clearly had the power to *reach* the issue of the calculation," "[w]hether the [arbitrator]'s calculation . . . was correct is beyond the reach of Section 10(a)(4)").

2. Exceeding the Scope of the Remand

In the Final Award, the arbitrator ordered AUCRA to return $79,167 that MRAB had paid under the first RPA plus 5% interest. Final Award at 3–4. In the Remand Order, the arbitrator reaffirmed that AUCRA owed MRAB $79,167 on the first RPA, but ordered that the 5% interest

15

on that sum would increase to 10% if AUCRA did not make payment within 30 days. Remand Order at 3. AUCRA argues that the arbitrator exceeded his authority in modifying the interest rate because the scope of this Court's remand was limited to the calculation of return premiums AUCRA owed on the second RPA. Def. Mot. at 17.

AUCRA is correct. In revisiting an issue he had already completely resolved in the Final Award, the arbitrator ran afoul of the common law doctrine of *functus officio*. As the Ninth Circuit has explained,

> It is [a] fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration. The policy which lies behind this is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion.

*Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, Local 631 v. Silver State Disposal Serv., Inc.*, 109 F.3d 1409, 1411 (9th Cir. 1997) (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967)) (alteration in original). The *functus officio* doctrine recognizes three exceptions: "an arbitrator can correct a mistake which is apparent on the face of his award, complete an arbitration if the award is not complete, and clarify an ambiguity in the award." *Id.* (citation omitted).

In this case, the arbitrator's March 19, 2018 decision expressly stated that it was the "Final Award" and was "in full settlement of all claims and counterclaims submitted to this Arbitration." Final Award at 4. It was thus final for the purposes of the *functus officio* doctrine. *See BridgeLux, Inc. v. Ensure Enter., Inc.*, No. C 08-04576 JW, 2009 WL 10709801, at *4 (N.D. Cal. Mar. 6, 2009) (holding that arbitrator was *functus officio* where his decision "expressly stated that it was his 'Final Award' and was 'in full settlement of all claims submitted to this Arbitration'"). This Court's subsequent remand did not trigger any of the exceptions to the doctrine. The purpose of the remand was not to allow the arbitrator to correct a mistake or to complete an incomplete award. Remand was ordered for the arbitrator to clarify a narrow aspect of the Final Award: how to calculate the return premium AUCRA owed to MRAB on the second RPA. *See* Docket No. 60

("[T]he matter is remanded to the arbitrator to resolve in the first instance the Parties' dispute over specific calculations for claims under the second [RPA]."). And although the *functus officio* doctrine allows an arbitrator to revisit an award to "clarify an ambiguity," *Int'l Bhd.*, 109 F.3d at 1411, that exception did not come into play here because the interest rate applicable to the first RPA had nothing to do with the issue the arbitrator was asked to clarify on remand. There was no ambiguity to clarify.

The Ninth Circuit's decision in *San Diego AFL-CIO Bus Drivers Local Div. 1309 of Amalgamated Transit Union v. San Diego Transit Corp.*, 972 F.2d 1342 (9th Cir. 1992) (Table), although unpublished, is instructive. In *San Diego*, the arbitration board issued a final award, then superseded it with a "corrected" award. *Id.* The Ninth Circuit recognized that "the Board did have authority to reopen the proceeding in order to clarify an ambiguity on the face of the award." However, the court found that "the Board overstepped its authority and did more than clarify an ambiguity in the award" because it also "redetermined issues that had already been decided." *Id.* And because the Board "redetermined the merits" of a provision of the award that did not require clarification, its "corrected award concerning this provision was in violation of the *functus officio* doctrine." *Id.*

The Fifth Circuit's decision in *Brown v. Witco Corp.*, 340 F.3d 209 (5th Cir. 2003) is also on point. There, the district court remanded a final award to the arbitrator to clarify how to determine an "average wage" for the purposes of computing a back-pay award. *Id.* at 214. Instead of resolving just the "average wage" issue, however, the arbitrator on remand revised other aspects of the back-pay determination. *Id.* at 214–15. The district court "vacated those parts of the arbitrator's remand decision that exceeded the scope of his limited authority on remand." *Id.* at 215. The Fifth Circuit affirmed under the *functus officio* doctrine:

> Once a court of competent jurisdiction has confirmed that an arbitration decision is unambiguous and binding on the parties, the arbitrator becomes *functus officio* with respect to that portion of the arbitration award and lacks authority to reconsider those aspects of his decision that are unambiguous and binding. . . . It follows, therefore, that if the arbitrator exceeds the scope of a limited remand order, then the court may vacate those portions of the arbitrator's decision on remand that go beyond his limited authority to clarify, complete, or correct the award that he has already made.

17

*Id.* at 221 (internal citations omitted).[3]

Here, too, the arbitrator went beyond clarifying a specific ambiguity in redetermining an issue that had already been decided. Accordingly, the arbitrator exceeded his authority in modifying the interest rate applied to sums owed on the first RPA. However, this error does not provide a basis for vacating the Remand Order in its entirety. "If an arbitrator exceeded the scope of his authority in issuing an award, and that award is divisible, we may vacate part of the award and leave the remainder in force." *Comedy Club*, 553 F.3d at 1288 (citations omitted); *Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003) ("A federal court may vacate an arbitration award, or a portion thereof, if the arbitrators acted beyond their authority.") (citing 9 U.S.C. § 10). Because the interest rate for sums owed on the first RPA is not connected to the other issues clarified in the Remand Order, only the portion of the Remand Order increasing the interest rate is **VACATED**.

### 3. Improperly Awarding Attorneys' Fees

Finally, AUCRA contends that the arbitrator failed to comply with the governing arbitration rules in awarding attorneys' fees to MRAB and therefore exceeded his authority. Def. Mot. at 17–18. Article 34 of the ICDR Rules provides that "[t]he arbitral tribunal shall fix the costs of arbitration in its award(s)" and "may allocate such costs among the parties," including "the reasonable legal and other costs incurred by the parties." In the Remand Order, the arbitrator ordered AUCRA to "reimburse MRAB for attorney fees and expenses spent since March 19, 2018 . . . specifically associated with this application." Remand Order at 4. Because the arbitrator did not specify a dollar amount for the fee award, AUCRA argues that he "did not fix the amount" as

---

[3] Notwithstanding the language in *Brown* about an arbitrator becoming *functus officio* after confirmation of an award, the doctrine is triggered as soon as the final award is issued, and does not require court confirmation to apply. *See Int'l Bhd.*, 109 F.3d at 1411 ("[O]nce an arbitrator has made and published a final award his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration.") (citation omitted). The Third Circuit's decision *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327 (3d Cir. 1991) illustrates this point. The arbitration panel there had issued a final award then, before confirmation, purported to issue a corrected final award in response to one party's request for clarification. *Id.* at 330. The Third Circuit held that the arbitration panel was *functus officio* with respect to the original award once it issued and had no authority to "correct" it. *Id.* at 333.

required by Article 34. Def. Mot. at 17.

As an initial matter, the arbitrator stated that he was awarding fees pursuant to "Article [13](L)[4] of the RPA," not Article 34 of the ICDR Rules. Remand Order at 4. Article 13(L) of the RPA provides that "[t]he arbitrator(s) may . . . in their discretion award such other costs and expenses as they deem appropriate, including, but not limited to, attorneys' fees." Docket No. 62-1, Exh. G § 13(L). There is no requirement that the arbitrator must "fix" fees. "[A]rbitration is a matter of contract" and the FAA "requires courts to enforce [arbitration agreements] according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The arbitration clause in the RPA confers broad discretion on the arbitrator to award fees. The arbitrator did not exceed his authority in exercising his discretion to award attorneys' fees to MRAB. Moreover, the ICDR Rules do not define what it means to "fix the costs of arbitration." AUCRA cites no authority in support of its contention that an arbitrator's failure to specify the exact dollar amount of the fees violates Article 34 of the ICDR Rules or provides a basis for vacatur of an award under the FAA.

The Court thus concludes that the arbitrator did not exceed his authority in issuing the fee award. However, the arbitrator retains authority to resolve any disagreement between the parties about the fee amount requested by MRAB. Accordingly, to the extent there is a dispute about the fee amount, the Court **REMANDS** the matter to the arbitrator for the limited purpose of resolving that dispute.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** both MRAB's motion to confirm and AUCRA's motion to vacate. The provision of the Remand Order increasing the interest rate applied to sums owed under the first RPA is vacated. Otherwise, the Final Award, as supplemented by the Remand Order, is confirmed in full.

The Clerk of Court shall enter judgment in favor of MRAB for: (1) $79,167 owed under the first RPA plus 5% simple interest accruing from January 10, 2018; (2) $103,828 owed under the second RPA plus 10% simple interest accruing from 30 days after the Remand Order was

---

[4] The Remand Order cites Article 11(L), but this appears to be a typographical error, as there is no Article 11(L) in the RPA.

issued; (3) any capital deposits not returned or contained within the amounts stated in (1) and (2) plus 10% simple interest accruing from 30 days after the Remand Order was issued; (4) attorneys' fees and expenses incurred since March 19, 2018, in an amount to be determined by the arbitrator; and (5) $1,912.50 in administrative and arbitration fees. As stated in the Remand Order, "if the second period of the RPA develops beyond the amounts currently reserved by AUCRA[,] AUCRA will have the right to reduce the amount due to be returned to MRAB by any additional paid losses above and beyond the amounts that currently exist (approximately $179,585)." Remand Order at 3–4.

This order disposes of Docket Nos. 62 and 64.

**IT IS SO ORDERED**.

Dated: June 17, 2019

_____
EDWARD M. CHEN
United States District Judge